```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re: MARCONI PLC,                                          :
                                                             :   Case No. 03-B-11949 (SMB)
                         Debtor.                             :
-------------------------------------------------------------x
                                                             :
JOHN OSANITSCH,                                              :
                                                             :
                 Plaintiff-Appellant,                        :
                                                             :
                                                             :   06 Civ. 6977 (GEL)
           -v-                                               :
                                                             :   OPINION AND ORDER
MARCONI PLC;                                                 :
MARCONI ACQUISITION SUB, INC.;                               :
MARCONI COMMUNICATIONS, INC.;                                :
MARIPOSA TECHNOLOGY CORPORATION,                             :
INC.,                                                        :
                                                             :
                 Defendants-Appellees.                       :
                                                             :
-------------------------------------------------------------x
```

James Jay Seltzer, Timothy D. Murphy, The Law Offices of James Jay Seltzer, Emeryville, CA, <u>for appellant</u>.

Robert N. Michaelson, Jeffrey N. Rich, Kirkpatrick & Lockhart Nicholson Graham LLP, <u>for appellees</u>.

GERARD E. LYNCH, <u>District Judge</u>:

      Plaintiff-appellant John Osanitsch appeals from an order of the United States Bankruptcy Court for the Southern District of New York (the Honorable Stuart M. Bernstein, Chief United States Bankruptcy Judge), dismissing for lack of jurisdiction an adversary proceeding he brought against defendants-appellees Marconi PLC and three affiliated companies. The judgment will be vacated and the case remanded to the Bankruptcy Court.

**BACKGROUND**

John Osanitsch was an executive at defendant Mariposa Technology, Inc. ("Mariposa"), a California telecommunications company, when Mariposa was acquired by defendant Marconi PLC, a British entity. Osanitsch continued to work for Marconi until December 2001. In a dispute over severance benefits to which he claims entitlement, Osanitsch charges that Marconi and the other defendants are guilty of fraud and breach of contracts.

Unfortunately, Marconi took no legal action on these claims until December 30, 2004. By that time, Marconi had gone bankrupt, and had entered a "Scheme of Arrangement" ("Scheme") – roughly equivalent to a plan of reorganization in an American bankruptcy proceeding – that was approved by the High Court in London in or about April 2003. At approximately the same time, the company's court-appointed representatives filed an ancillary proceeding in the United States Bankruptcy Court for the Southern District of New York pursuant to the former 11 U.S.C. § 304, seeking an order recognizing and assisting Marconi's reorganization in the United States.[1] On May 14, 2003, the Bankruptcy Court entered an order that, among other things, gave "full force and effect in the United States" to the Scheme, deemed Marconi discharged in accordance with the terms of the Scheme, and enjoined Marconi's creditors from, among other things, "commencing or continuing any action or other proceeding related to any [Marconi] Scheme Claim" against Marconi. (Order of May 14, 2003, at 5-6.)

---

[1] § 304 was repealed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 802(d)(3) (2005), and replaced by a new chapter 15 of the Bankruptcy Code. See, e.g., 2 Collier on Bankruptcy, at 304-1 ed. note (15th ed. rev. 2006) (noting that chapter 15 is only effective "in cases commenced on or after October 17, 2005"). However, because the ancillary proceedings involved here were filed under § 304, and because both parties refer to § 304 and not to any replacement statute as governing this case, the Court will refer to that section in the present tense.

Osanitsch, apparently unaware of the Bankruptcy Court's order, brought an action against Marconi and others in the California state courts in December 2004. Marconi removed the case to federal court, and on February 10, 2006, the United States District Court for the Northern District of California (the Honorable Charles R. Breyer, United States District Judge) denied Osanitsch's motion to remand and dismissed the case, finding it barred by the Bankruptcy Court's injunction, "without prejudice to plaintiff re-filing the action in bankruptcy court." (Order of Dismissal, Osanitsch v. Marconi PLC, No. C 05-3988 CRB, at 1 (N.D. Cal. Feb. 10, 2006)).

Osanitsch then filed this action as an adversary proceeding in the Bankruptcy Court, essentially repeating the same claims that had been dismissed in California. Marconi filed a motion to dismiss Osanitsch's complaint, which the Bankruptcy Court converted *sua sponte* to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056. (Order Granting Motion of Defendant Marconi PLC for Summary Judgment and Dismissing Adversary Proceeding, Osanitsch v. Marconi PLC, No. 06-01262 (SMB), at 1-2 (Bankr. S.D.N.Y. Aug. 7, 2006)). Thereafter, the Bankruptcy Court, upon the above undisputed facts, granted summary judgment to defendants dismissing the case for lack of jurisdiction. Id. at 5. Osanitsch appealed that order to this Court.

## DISCUSSION

Because the issues in this case are matters of statutory interpretation, the Court reviews the decision of the Bankruptcy Court de novo. In re Koreag, Controle et Revision, S.A., 961

F.2d 341, 347-48 (2d Cir. 1992).[2]

Former § 304 of the Bankruptcy Code authorizes representatives of a foreign bankrupt to institute ancillary proceedings in the United States Bankruptcy Courts "to protect the administration of the foreign proceeding." Id. at 348. "Among the forms of relief authorized by § 304 are an injunction prohibiting actions against the debtor and the 'turnover' of property to a foreign representative." In re Treco, 240 F.3d 148, 151 (2d Cir. 2001), citing 11 U.S.C. § 304(b)(1), (2). "The purpose of a § 304 petition is to prevent the piecemeal distribution of assets in the United States by means of legal proceedings instituted in domestic courts by local creditors," and the bankruptcy courts are given broad discretion to fashion appropriate remedies. Koreag, 961 F.2d at 348.

These powers are not limitless. In Treco, the Second Circuit emphasized that § 304 sets forth a number of factors that must be balanced by a bankruptcy court in deciding whether to grant relief under § 304. The statute represents "a step toward the universality approach" in which "a primary insolvency proceeding is instituted in the debtor's domiciliary country, and ancillary courts in other jurisdictions – typically in jurisdictions where the debtor has assets – defer to the foreign proceeding and in effect collaborate to facilitate the centralized liquidation of the debtor's estate according to the rules of the debtor's home country." 240 F.3d at 153-154. However, the statute represents only a "modified" universalism that accepts the notion that assets should be collected and distributed on a worldwide basis, but reserves to local courts the

---

[2] The decision to grant a § 304 petition by a bankruptcy court is reviewed under an abuse of discretion standard. See In re Treco, 239 B.R. 36, 40 (S.D.N.Y. 1999). However, as discussed *infra*, there is no contention that the Bankruptcy Court abused its powers in granting the § 304 petition. The only issue before this Court is the Bankruptcy Court's interpretation of its subject matter jurisdiction under § 304, an issue to be reviewed de novo.

discretion to evaluate the fairness of the foreign bankruptcy proceedings and to protect the interests of local creditors.  Id. at 154.  The statute thus expressly directs the bankruptcy court to evaluate a number of factors before deferring to the foreign court and granting the requested relief.  Id.  In Treco, the Court of Appeals reversed an order of the Bankruptcy Court, finding that that court had abused its discretion in granting an order requiring turnover of certain property to the bankruptcy estate.  Id. at 160-61.

In this case, however, there is no contention that the Bankruptcy Court abused its powers in granting the relief requested by the Marconi representatives.  The Court expressly found that relief was necessary "to permit the expeditious and economical administration" of the foreign bankruptcy; that absent relief, creditors would likely sue Marconi in the United States and thereby do "irreparable injury" to the ability of the British representatives to marshal Marconi's assets and administer them in accordance with the reorganization Scheme; and that the relief requested – including an injunction against such suits – "will not cause undue hardship or inconvenience to" American creditors of Marconi, or at least that any such hardship or inconvenience "is outweighed by the benefits to [Marconi], its estate and [its] creditors."  (Order of May 14, 2004, at 4-5.)  The Bankruptcy Court thus properly enjoined the bringing of a lawsuit such as that pursued by Osanitsch.

The present complaint sought to institute an adversary proceeding in the Bankruptcy Court.  The amended complaint incorporated by reference the complaint previously filed in California (Am. Compl. ¶ 3), and expressly demanded "judgment for the damages and other relief prayed for in [the California complaint]."  (Id. at 5.)  The complaint further alleged that the proceeding "is one arising in the debtor's case number 03-B-11949 pursuant to Section 304 of

the Bankruptcy Code," and that the court "has jurisdiction pursuant to 28 U.S.C. § 1334 [and] 11 United States Code section 304." (Id. ¶ 2; emphasis omitted.)  But as defendants point out, to the extent that plaintiff seeks a judgment for damages, these provisions do not authorize institution of an action in the Bankruptcy Court.

Section 304 is a strictly limited provision.  It authorizes the institution of a particular kind of action by particular parties.  Only a "foreign representative," as defined by the Code,[3] may file a petition under § 304(a); Osanitsch does not and cannot claim that he meets this definition. Although § 304(b) grants the court broad discretion to fashion appropriate relief, the types of relief specifically authorized by § 304(b) and the considerations that the court is directed to apply under § 304(c) make clear that the action contemplated by § 304 is one by authorized representatives of the foreign bankrupt to marshal and protect the estate's assets in the United States for distribution in the bankruptcy proceeding abroad.[4]  Osanitsch does not seek to pursue such an action; rather, he seeks to obtain a judgment against the bankrupt and other parties.

As this Court has previously held, the filing of a § 304 petition "does not create a bankruptcy 'estate' that must be 'administered' by the court."  Sturge v. Smouha (In re Smouha), 136 B.R. 921, 929 (S.D.N.Y. 1992), appeal dismissed, 979 F.2d 845 (2d Cir. 1992).  An ancillary proceeding under § 304 "is not a bankruptcy that implicates the full range of procedural and substantive provisions applicable to domestic bankruptcies."  Koreag, 961 F.2d at 357.  In such a proceeding, a bankruptcy court lacks the full range of jurisdiction that applies when the

---

[3] "Foreign representative" is defined under § 101 of the Bankruptcy Code as "[a] duly selected trustee, administrator, or other representative of an estate in a foreign proceeding." 11 U.S.C. § 101(24).

[4] See, e.g., In re Evans, 177 B.R. 193 (Bankr. S.D.N.Y. 1995).

Court is seized of a domestic bankruptcy matter. As the Bankruptcy Court ruled in Treco, "to the extent that [an] action preserves, protects or recovers property of the foreign debtor, we have jurisdiction under § 304 to adjudicate it. By contrast, *claims that are unrelated to the preservation or recovery of property in aid of a foreign proceeding are outside the ambit of our limited § 304 jurisdictional mandate*." Petition of Treco, 227 B.R. 343, 349-50 (Bankr. S.D.N.Y. 1998) (emphasis added).[5]

Section 304 thus does not permit the filing by domestic creditors of adversary proceedings to establish claims against a foreign bankrupt. Indeed, its very purpose is to centralize such proceedings (where the bankruptcy court determines that such centralization is appropriate) in the foreign court administering the bankruptcy. To permit the filing of such actions under the rubric of the bankruptcy court's § 304 "matter" would defeat the entire purpose of that provision.

This conclusion would matter little if the Bankruptcy Court had jurisdiction of the action pursuant to some other statute, and the complaint also invokes jurisdiction under 28 U.S.C. § 1334. That statute confers upon the district courts (and the bankruptcy courts that are a department of the district courts) jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. § 1334(b). This jurisdiction, when properly invoked, is very broad. But it does not help Osanitsch.

---

[5] The Second Circuit's decision in Treco has no bearing on this analysis. The Court of Appeals did not address the jurisdictional ruling. It simply held that the Bankruptcy Court erred on the merits in granting the relief requested by the foreign representative, a turnover of property, in that portion of the action over which the Bankruptcy Court correctly held that it *did* have jurisdiction. Treco, 240 F.3d at 160-61. Cf. id. at 161 ("We pause to underscore ... that the case-specific analysis required by § 304 will in many or most cases support the granting of the requested relief.").

"'Arising in' and 'arising under' proceedings encompass the matters that are at the core of the jurisdiction of the bankruptcy courts, and depend upon the application or construction of bankruptcy law as expressed in Title 11." In re Leco Enterprises, Inc., 144 B.R. 244, 248 (S.D.N.Y. 1992) (citation and internal quotation marks omitted). The category is essentially identical to the classification of "core" bankruptcy proceedings for purposes of 28 U.S.C. § 157(b)(2). Id. "To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment." Acolyte Elec. Corp. v. City of New York, 69 B.R. 155, 173 (Bankr. E.D.N.Y. 1986), aff'd, 1987 WL 47763 (E.D.N.Y. Mar. 27, 1987). Osanitsch's complaint manifestly does not fall within this category. It raises no claims created by or unique to bankruptcy law, but rather ordinary tort and contract claims arising under the common law of California.[6]

The broadest category of bankruptcy jurisdiction involves matters "related to cases under title 11." 28 U.S.C. § 1334(b).[7] As this Court has held in giving an expansive reading to that provision, "[t]he dominant standard for 'related to' jurisdiction is that set forth by the Third Circuit in In re Pacor, Inc., 743 F.2d 984 (3d Cir.1984). The Pacor test states that a civil proceeding is 'related to bankruptcy' if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' Id. at 994." In re WorldCom, Inc. Securities Litigation, 293 B.R. 308, 317 (S.D.N.Y. 2003) (emphasis removed). But in a § 304

---

[6] Indeed, the complaint itself acknowledges that the action it seeks to bring "is a non-core proceeding." (Am. Compl. ¶ 13.)

[7] See, e.g., In re WorldCom, Inc. Securities Litigation, 293 B.R. 308, 317 (S.D.N.Y. 2003) ("[W]hile 'related to' jurisdiction is not limitless, it does encompass more than simply proceedings involving the property of the debtor or the estate.") (citation and internal quotation marks omitted).

proceeding, as discussed above, there is no "estate being administered in bankruptcy" in the United States. Accordingly, even under this quite expansive test, there is no basis for contending that Osanitsch's common-law tort and contract claims are related to any bankruptcy case.[8]

Osanitsch's somewhat desperate claims of non-bankruptcy-related jurisdiction are without merit. He argues that Marconi somehow conceded jurisdiction by removing his California action to federal court on grounds of diversity of citizenship. (Pl. Mem. 12; Pl. Reply Mem. 2-5.) But it is axiomatic that federal jurisdiction cannot be created by consent or waiver or estoppel. United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 303 (2d Cir. 1994). In any event, the issue here is not the jurisdiction of the District Court in California, but of the Bankruptcy Court here. Osanitsch's complaint nowhere invokes diversity jurisdiction or alleges the plaintiff's citizenship,[9] and it was filed directly in the Bankruptcy Court. Nor does it help to note, as Osanitsch correctly does, that the Bankruptcy Court is simply an arm of the District Court. That is so; but if Osanitsch sought to bring a non-bankruptcy action in the District Court, the proper way to do that was to file in the District Court itself.[10]

---

[8] Cf. In re Wachsmuth, 272 B.R. 766, 770 (Bankr. M.D. Fla. 2001) ("It is evident that Congress did not intend to vest jurisdiction in the Bankruptcy Court by § 304 ... to maintain a pure state law non-core proceeding which is not even related to a pending case under 28 U.S.C. § 1334(b).").

[9] The complaint nowhere invokes diversity jurisdiction, and does not properly allege diversity of citizenship. Although the underlying California complaint, incorporated by reference in the Bankruptcy Court amended complaint (Am. Compl. ¶ 3), alleges that Osanitsch was a resident of Petaluma, California at the time of the events giving rise to the claims (Id. Ex. 3, ¶ 1), it does not assert that he is a United States or California citizen and does not refer to his residence as of the time the complaint was filed.

[10] Osanitsch argues that the Bankruptcy Court should have requested that this Court withdraw the standing reference of bankruptcy matters to it, rather than dismissing for lack of

The Bankruptcy Court was thus correct to hold that it lacked jurisdiction over plaintiff's complaint, at least to the extent that the complaint seeks a judgment for damages.[11]

But the complaint is not limited to seeking such relief. In addition to setting forth the factual basis for his claims for damages in tort and contract, and seeking a judgment thereon, Osanitsch also appears to seek other relief that is within the jurisdiction of the Bankruptcy Court to grant. The complaint sets forth the undisputed facts that the Bankruptcy Court entered an order pursuant to § 304, that the defendants "have asserted the protection of [that] order" against the action brought by plaintiff in California, and that the Bankruptcy Court "reserved and retained jurisdiction with respect to the enforcement, amendment or modification of its . . . order." (Am. Compl. ¶¶ 10-11.) Plaintiff concludes from this that the Bankruptcy Court "therefore retains jurisdiction over the defendants' asserted protection" (id. ¶ 11), and prays the court that his claims against Marconi "be permitted to proceed to resolution by final judgment in

---

jurisdiction. (Pl. Mem. 12.) But Osanitsch does not refer to any evidence in the record that he ever asked the Bankruptcy Court to make such a request. In any event, this Court's rules make clear that the proper way to seek withdrawal of the reference is to make a motion in the District Court, not in the Bankruptcy Court. Cf. In re Agency for Deposit Ins., Rehabilitation, Bankruptcy and Liquidation, 2002 WL 31898125, at *1 (S.D.N.Y. Dec. 30, 2002). And as noted above, the contemplated procedure is somewhat bizarre: the proper way to bring a diversity action is to file in the District Court in the first place, not to file a complaint in the Bankruptcy Court and then seek withdrawal of the reference. Finally, in the interest of orderly procedure, this Court declines to withdraw the reference *sua sponte* and convert Osanitsch's bankruptcy appeal into a free-standing diversity complaint. Among the many reasons to reject any such maneuver, the Court notes that precisely such an action remains pending in California, where Osanitsch has appealed Judge Breyer's dismissal to the Ninth Circuit. (Defs. Mem. 6.)

[11] Indeed, if Osanitsch was permitted to pursue his claims in the Bankruptcy Court, he would receive the benefit of an additional forum in which to litigate his claims simply because he happened to sue a bankrupt party. As the Third Circuit has noted, "[b]ankruptcy jurisdiction . . . was not conferred for the convenience of those not in bankruptcy to enlarge the possibility of recovery over and above that which they otherwise may have had." Pacor, 743 F.2d at 994.

an appropriate forum" (id. at 5). In short, Osanitsch asked the Bankruptcy Court to modify its injunction to permit his California action to go forward.

There can be no doubt that the Bankruptcy Court has jurisdiction to provide such relief. First, as noted above, § 304 provides the Bankruptcy Court broad discretion to tailor the relief accorded to foreign representatives. Cases such as Koreag and Treco make clear that in determining the scope of the relief to be granted (if any), the court must consider *all* of the factors set forth in § 304(c),[12] including protection of the legitimate interests of claim holders in the United States.[13] Upon balancing those factors in 2003, the Bankruptcy Court entered a broad injunction. But Osanitsch was not a party to those proceedings, and the Bankruptcy Court accordingly had no ability to consider his claims, his interests, and his arguments in determining the appropriate scope of the injunction. The Court had the power to enter a more limited injunction at the time, had Osanitsch then appeared, and it certainly has the inherent power to modify that injunction now, if it appears appropriate to do so in light of Osanitsch's contentions.

Second, the Bankruptcy Court expressly reserved that very power, just as Osanitsch alleges. The Court's order specifically provides that "this Court retains jurisdiction with respect to the enforcement, *amendment or modification* of [this] Order." (Order of May 14, 2003, at 9;

---

[12] See also In re YMB Magnex Int'l, Inc., 249 B.R. 402, 411 (Bankr. E.D. Pa. 2000) ("[A]ll factors discussed in 11 U.S.C. § 304 should be evaluated and given even weight.") (citing 2 Collier on Bankruptcy ¶ 304.08 (15th ed. rev. 2006)). See, e.g., Haarhuis v. Kunnan Enters., LTD., 223 B.R. 252, 255 (Bankr. D.D.C. 1998) ("These factors are not requirements but are, rather, guideline criteria by which the bankruptcy court should measure the extent to which foreign law is compatible with U.S. practice.").

[13] See, e.g., In re Hourani, 180 B.R. 58, 66 (Bankr. S.D.N.Y. 1995) (denying debtor's § 304 petition on the ground that the Jordanian bankruptcy laws did not "ensure integrity and fairness" for the creditors).

emphasis added.)  There is thus no plausible argument that the Bankruptcy Court lacks jurisdiction to grant a portion of the relief requested by Osanitsch – an amendment or modification of the injunction to permit his claims to go forward in California.[14]

This Court, of course, intimates no view as to whether such an amendment or modification would be a prudent exercise of discretion.  The Bankruptcy Court might be persuaded that the effective administration of the foreign bankruptcy proceedings warrants a continued injunction, and relegates Osanitsch to his remedies under the Scheme of Arrangement.  Indeed, Osanitsch has apparently submitted a claim under the Scheme, which was rejected by the Scheme Supervisors.  (Pl. Mem. 4; Defs. Mem. 6-8.)[15]  The Bankruptcy Court thus might conclude that the injunction against proceedings in American courts should continue in force, and that the remedy of appeal to an arbitrator in London adequately protects Osanitch's interests and most efficiently furthers the administration of the estate.  Or it might be persuaded by Osanitsch's argument that he should be allowed to proceed with the California action, because the Scheme permits, as an alternative remedy, the maintenance of an "Ascertainment Proceeding" including a lawsuit in an appropriate court.  (Pl. Mem. 4; Defs. Mem. 8.)  But however the Bankruptcy Court disposes of Osanitsch's request, its ruling will be an exercise of discretion on the merits, and that Court clearly has jurisdiction to make such a ruling.

---

[14] See, e.g., In re Banco Nacional de Obras y Servicios Publicos, S.N.C., 91 B.R. 661, 668 (Bankr. S.D.N.Y. 1988) (modifying § 304 injunction to permit union to continue prosecuting its action in District Court).  See also YMB Magnex, 249 B.R. at 411 (modifying § 304 injunction to permit claims against debtor for contribution and indemnity in a class action suit).

[15] The claim was rejected on the basis of a release signed by Osanitsch when he left his job.  (Defs. Mem. 7.)

## CONCLUSION

Accordingly, to the extent that the Bankruptcy Court ruled that it lacked jurisdiction to adjudicate plaintiff's common-law claims on the merits, its ruling was correct. However, because the Court does have jurisdiction to modify its § 304 injunction, and because plaintiff's complaint requested such relief, the Bankruptcy Court's judgment dismissing the entire complaint for lack of jurisdiction must be vacated, and the case remanded to the Bankruptcy Court for that Court to address plaintiff's application for amendment or modification of the injunction.

SO ORDERED.

Dated: New York, New York
       January 30, 2007

_____
GERARD E. LYNCH
United States District Judge